**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

KEVIN REMMES,

        Plaintiff,

vs.

INTERNATIONAL FLAVORS &
FRAGRANCES, INC., a New York
corporation; GIVAUDAN FLAVORS
CORP., a Delaware corporation,
formerly known as Givaudan, Inc. and
Givaudan-Roure, a division of Roche
Group; FLAVORS OF NORTH
AMERICA, INC., an Illinois
corporation; SENSIENT FLAVORS,
INC., a Wisconsin corporation, formerly
known as Universal Flavors, Inc.; THE
FLAVOR & EXTRACT
MANUFACTURERS ASSOCIATION
OF THE UNITED STATES, a Maryland
non-profit corporation; and, THE
ROBERTS GROUP, L.L.C., a District
of Columbia limited liability company,

        Defendants.

No. C04-4061-MWB

**ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS**

---

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *1. Facts relevant to counts II and III* . . . . . . . . . . . . . . . . . . 4

        2.    *Facts related to personal jurisdiction over FEMA and TRG*  . . 7

II.  LEGAL ANALYSIS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     A.  *Rule 12(b)(6) Standards*  . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     B.  *Fraud Claims*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           1.    *Pleading fraud under Rule 9(b)*  . . . . . . . . . . . . . . . . 12
           2.    *Application of the Rule 9(b) pleading standards*  . . . . . . . 13
           3.    *Leave to amend the complaint*  . . . . . . . . . . . . . . . . . 16
     C.  Legal standards for personal jurisdiction  . . . . . . . . . . . . . . . . . 17
           1.    *Long-arm authority* . . . . . . . . . . . . . . . . . . . . . . . . 18
           2.    *Minimum contacts*  . . . . . . . . . . . . . . . . . . . . . . . . 19
                 a.    *Specific v. general jurisdiction* . . . . . . . . . . . . . 20
                 b.    *The five factor test* . . . . . . . . . . . . . . . . . . . . 21
           3.    *Analysis*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.  INTRODUCTION AND BACKGROUND

### A.  *Procedural Background*

On October 5, 2004, plaintiff Kevin Remmes filed an amended complaint against defendants International Flavors & Fragrances, Inc. ("IFF"), Givaudan Flavors Corp. ("Givauden"), Flavors of North America, Inc. ("FONA"), Sensient Flavors, Inc. ("Sensient"), the Flavor and Extract Manufacturers Association of the United States ("FEMA"), and the Roberts Group, L.L.C. ("TRG") alleging three causes of action.  The three causes of action asserted are for negligence, fraudulent concealment and civil

conspiracy. The Complaint alleges that this court has subject matter jurisdiction by virtue of diversity of citizenship of the parties, 28 U.S.C. § 1332.

Defendant Sensient filed a Motion to Dismiss Counts II and III of Plaintiff's Amended Petition (Doc. No. 64). Specifically, Sensient asserts that Count II, Remmes's fraudulent concealment claim, should be dismissed for failure to plead fraud with particularity, and that Count III, Remmes's civil conspiracy claim, should be dismissed because it is based entirely on the fraudulent concealment claim. Defendant IFF then filed its Joinder in Defendant Sensient's Motion to Dismiss Counts II and III of Plaintiff's Amended Petition (Doc. No. 68). This motion was followed by defendant Givaudan's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint (Doc. No. 72). In its motion, defendant Givaudan asserts the same grounds for dismissal raised in defendant Sensient's motion. Defendant FONA subsequently filed its own Motion to Dismiss Counts II and III of Plaintiff's Amended Petition (Doc. No. 77). In its motion, defendant FONA argues for dismissal on the same grounds raised in defendant Sensient's motion. Defendants FEMA and TRG then filed a joint Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. No. 86). In their motion, defendants FEMA and TRG assert that they do not have sufficient minimum contacts with the State of Iowa so as to satisfy the Due Process Clause of the United States Constitution. After obtaining several extensions of time, plaintiff Remmes filed timely resistances to the defendants' motions. Defendant Sensient then filed a reply brief which defendants FONA and IFF separately joined. Defendants FEMA and TRG also filed a reply brief in response to plaintiff Remmes's resistance to their joint motion. Plaintiff Remmes subsequently filed a sur-reply brief in support of his position.

### B. Factual Background

#### 1.     Facts relevant to counts II and III

On a motion to dismiss, the court must assume all facts alleged in plaintiff Remmes's amended complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Therefore, the following factual background is drawn from plaintiff Remmes's amended complaint in such a manner.

Plaintiff Remmes resides in Sioux City, Iowa and was employed by the American Popcorn Company in Sioux City, Iowa. Defendant IFF is a New York corporation with its principal place of business in New York, New York. Givauden is a Delaware corporation with its principal place of business in Cincinnati, Ohio. FONA is an Illinois corporation with its principal place of business in Carol Steam, Illinois. Sensient is a Wisconsin corporation with its principal place of business in Indianapolis, Indiana. Defendants IFF, Givauden, FONA, and Sensient each design, manufacture, distribute and sell butter flavorings marketed to entities, including the American Popcorn Company.

The butter flavorings sold by defendants IFF, Givauden, FONA, and Sensient contain diacetyl and/or other volatile organic compounds that can cause human disease and injury. In the course of his employment at the American Popcorn Company, Remmes was exposed to butter flavorings designed, manufactured, distributed and sold by defendants IFF, Givauden, FONA, and Sensient. Remmes alleges that as a result of this exposure that he has suffered severe and permanent injury to his person including, bronchiolitis obliterans, severe and progressive damage to the respiratory system, and extreme shortness of breath. In addition, because of his exposure, Remmes's life expectancy has been significantly reduced.

In his fraudulent concealment claim, plaintiff Remmes alleges the following:

> 27.     The Defendants knew, or should have known, that the

butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:

    a.    Damage to human mucous membranes, and;

    b.    Respiratory disease.

28.    Defendants knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

    a.    By at least 1991, the Defendants knew that diacetyl was a health hazard when inhaled;

    b.    By at least 1991, the Defendants knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

    c.    By at least 1991, the Defendants knew that diacetyl is a hazard to human mucous membranes;

    d.    By at least 1993, the Defendants knew their butter flavoring workers were experiencing "breathing problems."

    e.    By at least 1993, the Defendants knew that persons working around butter flavorings must wear full-face respirators;

    f.    By at least 1993, the Defendants knew that diacetyl is a severe respiratory hazard, causing, *inter alia*, respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and; emphysema;

    g.    By at least 1993, the Defendants knew the $LC_{50}$ for diacetyl;

    h.    By at least 1994, the Defendants knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

    i.    By at least 1994, the Defendants knew that diacetyl volatilizes above 83 F and that potential

diacetyl volatilization must be minimized for worker safety;

j.  By at least 1994, the Defendants recognized that butter flavorings should be mixed in a "closed system" to prevent an volatilization of diacetyl or other butter flavoring constituents into the air;

k.  By at least 1995, the Defendants knew that their customers were experiencing severe health problems associated with their butter flavorings;

l.  By at least 1995, the Defendants were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn.

m.  By at least 1995, the Defendants knew that diacetyl is a "harmful organic vapor";

n.  By at least 1996, the Defendants were aware of all available research regarding diacetyl's effects on the mucous membranes, and;

o.  By at least 1996, the Defendants knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans.

29.  Despite the fact that Defendants knew that the butter flavorings and/or their constituents cause adverse health effects, including severe respiratory disease, they intentionally and maliciously chose to conceal these facts from the scientific and medical communities, the government and the public, including Plaintiff, Kevin Remmes.

30.  The information concealed by the Defendants regarding the serious health risks of using their butter flavorings was material.

31.  Defendants had a duty to disclose such information to the Plaintiff because, *inter alia*,

a.  Defendants possessed knowledge regarding the health effects of butter flavorings and/or their constituents that was superior to Plaintiff's knowledge;

> b. Defendants had a relationship of trust and/or confidence with Plaintiff, and;
>
> c. other attendant circumstances.
>
> 32. Defendants profited from their fraud by continuing and increasing the sale of butter flavoring products which they knew were hazardous to persons deliberately kept ignorant of material facts concerning the true hazards of diacetyl and/or butter flavorings.

Amended Compl. at ¶ 27-32.

### 2. *Facts related to personal jurisdiction over FEMA and TRG*

Viewing the record in the light most favorable to plaintiff Remmes and resolving all factual conflicts in his favor, the court makes the following factual findings. Defendant FEMA is a national trade association that is organized under the laws of Maryland. FEMA's only office is located in Washington, D.C. FEMA is comprised of flavor manufacturers, flavor users, flavor suppliers and other entities with an interest in the United States flavor industry. FEMA currently has a national membership of 102 companies. Among its members are defendants IFF, Givauden, FONA, and Sensient. None of its current members are based in Iowa. Only one Iowa based company, Kemin Industries, Inc., has ever belonged to FEMA. Kemin Industries, Inc. terminated its membership in FEMA in April 1989. FEMA is engaged in such activities as promoting the commercial interests of its members, monitoring and responding to legislation of concern to the flavor industry, educating its members on regulatory compliance, and protecting its members' intellectual property rights.

Defendant TRG is a limited liability company organized under the laws of Maryland. Defendant TRG's sole office is in Washington, D.C. Defendant TRG is a management company that provides trade associations, such as FEMA, with staff and managerial services.

Neither FEMA nor TRG manufactures, distributes, or sells butter flavorings or other products. Neither FEMA nor TRG participated in the manufacture, distribution, or sale of butter flavorings to plaintiff Remmes's employer, the American Popcorn Company. The American Popcorn Company is not a member of FEMA. Neither FEMA nor TRG possess any control or authority over the manufacturing, distribution, or sales actions of any of FEMA's members, including defendants IFF, Givauden, FONA, and Sensient.

FEMA and TRG are not registered to do business in Iowa. In addition, FEMA and TRG do not maintain a registered agent for service of process in Iowa and do not hold themselves out as licensed to conduct business in Iowa. Neither FEMA nor TRG have ever owned or leased property in Iowa, maintained any bank accounts in Iowa, or had any telephone listings in the State of Iowa. FEMA and TRG have never conducted a business meeting or a seminar in Iowa. Neither FEMA nor TRG has ever disseminated business materials in Iowa.

FEMA and TRG were involved in a conspiracy with at least defendant Givauden to suppress the health risks of butter flavorings. FEMA members, including defendants IFF, Givauden, FONA, and Sensient, actively sold butter flavorings in Iowa. These products were known by Defendants IFF, Givauden, FONA, Sensient, FEMA and TRG to be potentially dangerous to the end users of the butter flavorings. Research concerning the dangers of butter flavorings was concealed from the public. Plaintiff Remmes was injured as a result of his exposure at his place of employment, in Iowa, to butter flavorings.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(6) Standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon

which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir. 1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir. 1996) (same).

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan*

*v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 595-97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); *accord Conley*, 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway*

*2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). With these standards in mind, the court turns to consideration of defendants' respective motions to dismiss counts II and III.

### B. Fraud Claims

Defendants IFF, Givauden, FONA, and Sensient assert that plaintiff Remmes has failed to plead his fraud claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b),[1] and, therefore, has failed to state a claim upon which relief can be granted. In contrast, plaintiff Remmes maintains that his fraudulent concealment and civil conspiracy claims here are sufficient under the standards of Rule 9(b). The court, therefore, must determine whether plaintiff Remmes has pleaded his fraud based claims

---

[1] Federal Rule of Civil Procedure Rule 9(b) provides as follows:

> (b)  **Fraud, Mistake, Condition of the Mind**.  In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

FED. R. CIV. P. 9(b).

with sufficient particularity in his amended complaint.

### 1. *Pleading fraud under Rule 9(b)*

This court has articulated the standards for pleading fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure in a number of prior decisions. *See Schuster v. Anderson*, 378 F. Supp. 2d 1070, 1086 (N.D. Iowa 2005); *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 914 (N.D. Iowa 2001); *Wright v. Brooke Group, Ltd.*, 114 F. Supp. 2d 797, 832-33 (N.D. Iowa 2000); *Doe v. Hartz*, 52 F. Supp.2d 1027, 1055 (N.D. Iowa 1999); *Brown v. North Cent. F.S., Inc.*, 987 F. Supp. 1150, 1155-57 (N.D. Iowa 1997); *Brown v. North Cent. F.S., Inc.*, 173 F.R.D. 658, 664-65 (N.D. Iowa 1997); *North Cent. F.S., Inc. v. Brown*, 951 F. Supp. 1383, 1407-08 (N.D. Iowa 1996); *DeWit v. Firstar Corp.*, 879 F. Supp. 947, 970 (N.D. Iowa 1995). Thus, only a brief discussion of these matters is required here.

Rule 9(b) of the Federal Rules of Civil Procedure "'requires a plaintiff to allege with particularity the facts constituting the fraud.'" *Brown*, 987 F.Supp. at 1155 (quoting *Independent Business Forms v. A-M Graphics*, 127 F.3d 698, 703 n.2 (8th Cir. 1997)). "'When pleading fraud, a plaintiff cannot simply make conclusory allegations.'" *Id.* (quoting *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir.1997)). In *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir. 1995), the Eighth Circuit Court of Appeals explained:

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "'Circumstances' include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct.

> 527, 78 L.Ed.2d 710 (1983). Because one of the main
> purposes of the rule is to facilitate a defendant's ability to
> respond and to prepare a defense to charges of fraud,
> *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985),
> conclusory allegations that a defendant's conduct was
> fraudulent and deceptive are not sufficient to satisfy the rule.
> *In re Flight Transp. Corp. Sec. Litig.*, 593 F. Supp. 612, 620
> (D. Minn. 1984).

*Commercial Property*, 61 F.3d at 644; *see Roberts*, 128 F.3d at 651 (noting that factors a court should examine in determining whether the "circumstances" constituting fraud are stated with particularity under Rule 9(b) "include the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud."). However, the Eighth Circuit Court of Appeals has also noted that this rule of pleading is to be interpreted "'in harmony with the principles of notice pleading.'" *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). That is, "[a]lthough a pleading alleging fraud need not provide anything more than notice of the claim, it must contain 'a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *Id.* (quoting *Abels*, 259 F.3d at 920).

## 2. Application of the Rule 9(b) pleading standards

Defendants IFF, Givauden, FONA, and Sensient specifically assert that plaintiff Remmes has failed to plead his fraud claims with sufficient particularity because plaintiff Remmes does not identify the specific actions of an individual defendant but instead refers to defendants IFF, Givauden, FONA, and Sensient collectively. Plaintiff Remmes asserts in response that he may refer to defendants collectively since they are all alleged to have participated in the fraud.

As this court explained in *DeWit v. Firstar Corp.*, 879 F. Supp. 947 (N.D. Iowa 1995), where a plaintiff's complaint "accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud." *DeWit*, 879 F. Supp. at 972 (quoting *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994)); *accord Wright*, 114 F. Supp. 2d at 834 (quoting *DeWit*); *see Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("Therefore, in a case involving multiple defendants, such as the one before us, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'") (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming the district court's dismissal of the plaintiff's complaint with prejudice because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity." Instead, "the complaint lump[ed] all the defendants together and [did] not specify who was involved in what activity."); *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp.2d 225, 236 (S.D.N.Y. 2000) ("It is well-settled that '[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of its alleged participation in the fraud.' The requirements of Rule 9(b) are 'not satisfied by a complaint in which defendants are clumped together in vague allegations.'") (citations omitted); *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988) (stating that in cases involving multiple defendants "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant").

Plaintiff Remmes does not dispute that he has failed to describe the specific acts that each of the defendants undertook. Instead, he contends that his collective treatment of defendants is proper under the "group pleading" doctrine. The group pleading doctrine,

however, is an exception to the requirement that the fraudulent acts of each defendant be identified separately in the complaint. Under the group pleading doctrine, plaintiffs are exempted from the strictures of Rule 9(b)--in particular, they are exempted from specifying the particular role of defendants in the alleged fraud. Group pleading allows plaintiffs to "rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company." *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999) (internal quotations omitted); *accord Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004) (quoting *In re Oxford Health Plans, Inc.*, 187 F.R.D. at 142); *see also In re Livent, Inc. Secs. Litig.*, 78 F. Supp.2d 194, 219 (S.D.N.Y.1999) (noting that group pleading doctrine permits plaintiffs "to allege that misstatements contained in company documents may be presumed to be the work of the company's officers and directors"). It must be noted, however, that the group pleading doctrine is extremely limited in scope. Federal Courts of Appeals have construed the doctrine as applying only to clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions. *See, e.g., Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990) (holding that group pleading inapplicable to defendant who was merely affiliate of company that issued allegedly false offering memorandum); *DiVittorio*, 822 F.2d at 1249 (holding that group pleading doctrine inapplicable to affiliates of corporate defendants where those affiliates were not "tied to the [allegedly fraudulent] Offering Memorandum in any specific way, or even alleged to have been an officer or director of [the corporate defendants] when the Offering Memorandum was issued"); *Powers v. Eichen*, 977 F. Supp. 1031, 1041 (S.D. Cal. 1997) (holding that group pleading doctrine inapplicable to outside directors where "allegations do not sufficiently describe the outside directors' day-to-day

involvement in the corporation but rather attempt to include these directors by virtue of their titles and boilerplate 'access to information' language").[2]

This litigation concerns product liability, not securities. Plaintiff Remmes has not directed the court to any legal authorities extending the group pleading doctrine to fraud claims arising in the context of a products liability litigation. Nor has the court's own research disclosed any such authority. Therefore, the court concludes that the group pleading doctrine is not available here. Because the group pleading doctrine is unavailable, and because the actions of each defendant are left unspecified, it follows that plaintiff Remmes has not met the specificity requirements of Rule 9(b) as to his claim of fraudulent concealment found in Count II. Thus, Count II must be dismissed for failure to plead fraud with specificity. Moreover, the court concludes that the civil conspiracy claim found in Count III must also be dismissed because that claim is based entirely on the fraudulent concealment claim alleged in Count II. Therefore, the court grants defendant Sensient's Motion to Dismiss Counts II and III of Plaintiff's Amended Petition, defendant Givaudan's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint, and defendant FONA's Motion to Dismiss Counts II and III of Plaintiff's Amended Petition.

### 3.    *Leave to amend the complaint*

Plaintiff Remmes argues that justice requires that he be permitted leave to amend his complaint. A plaintiff is usually permitted to amend the complaint to replead fraud

---

[2]The court notes that several federal courts have concluded that the Private Securities Litigation Reform Act, 15 U.S.C. 78u-4, effectively abolished the group pleading doctrine. *See P. Schoenfeld Asset Mgmt. L.L.C. v. Cendant Corp.*, 142 F. Supp.2d 589, 618-21 (D. N.J. 2001); *Coates v. Heartland Wireless Communs., Inc.*, 26 F. Supp.2d 910, 915-16 (N.D. Tex. 1998); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350 (S.D. Cal. 1998); *Chu v. Sabratek Corp.*, 100 F. Supp.2d 827, 835-37 (N.D. Ill. 2000).

with particularity. *Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1435 (3rd Cir. 1997) ("Ordinarily where a complaint is dismissed on Rule 9(b) 'failure to plead with particularity' grounds alone, leave to amend is granted."); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284-85 (3rd Cir. 1992) ("Ordinarily, such claims are dismissed with leave to amend."); *Luce v. Edelstein*, 802 F.2d 49, 56-57 (2nd Cir. 1986) (noting that "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."). In cases where such leave has not been granted, plaintiffs have usually already had one opportunity to plead fraud with greater specificity. *Luce*, 802 F.2d at 56-57. Indeed, in *Caputo v. Pfizer*, 267 F.3d 181, 191 (2nd Cir. 2001), the Second Circuit Court of Appeals held that a district court abused its discretion in not permitting the plaintiff in that case to amend his complaint where the defendant never moved to dismiss on Rule 9(b) grounds, moved for summary judgment on Rule 9(b) grounds only after the close of discovery, and amendment of the complaint would not be futile. *Id.* Here, justice requires that leave to amend be granted. Although plaintiff Remmes has already amended his complaint once, that amendment was not made for the purpose of pleading fraud with greater specificity, and the court cannot say that an effort to replead would be futile. Therefore, the court will grant Remmes's request for leave to replead the claims contained in Count II and Count III of his Amended Complaint.

## *C. Legal standards for personal jurisdiction*

The plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant. *See Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988). Jurisdiction, however, need not be proved by a preponderance of the evidence until trial or until an evidentiary hearing is held. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). In order to defeat a motion to

dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of jurisdiction. *Dakota Indus.*, 946 F.2d at 1387. When examining the *prima facie* showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications Inc.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Dakota Indus.*, 946 F.2d at 1387).

A two-step analysis is employed in determining whether this court can properly exercise personal jurisdiction over nonresident defendants. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995); *Dakota Indus.*, 946 F.2d at 1387-88. First, the court must determine if jurisdiction is appropriate under the long-arm statute of the forum state. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 692 (8th Cir. 2003). If the state long-arm statute has been satisfied, then the court must next determine if the facts show that the nonresident defendants have minimum contacts with the forum state such that the court's exercise of jurisdiction would be fair and in accordance with the Due Process Clause of the Fourteenth Amendment. *Id.*; *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997); *Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1384 (8th Cir. 1996); *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991).

### 1.    Long-arm authority

In this case, the long-arm authority is Iowa Rule of Civil Procedure 1.306, which provides in pertinent part that

> [e]very corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal

> representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa Rule of Civil Procedure 1.306 (2004). Rule 1.306 has been interpreted to give Iowa courts jurisdiction to the fullest constitutional extent. *See Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992); *Waitt v. Speed Control, Inc.*, 212 F. Supp. 2d 950, 954-55 (N.D. Iowa 2002); *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980); *Aquadrill, Inc. v. Envtl. Compliance Consulting Serv.'s, Inc.*, 558 N.W.2d 391, 392 (Iowa 1997). Because the rule has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, the personal jurisdiction inquiry here collapses into the single question of whether exercise of personal jurisdiction comports with due process. *See Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994); *Med-Tec Iowa, Inc.*, 223 F. Supp.2d at 1036; *Waitt*, 212 F. Supp.2d at 955; *Pure Fishing, Inc. v. Silver Star Co., Ltd.*, 202 F. Supp. 2d 905, 915 (N.D. Iowa 2002).

## 2. *Minimum contacts*

Under the due process clause, the constitutional touchstone is whether plaintiff Remmes has established that FEMA and TRG have sufficient minimum contacts with Iowa such that this court's exercise of personal jurisdiction over FEMA and TRG does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Northwest Airlines, Inc.*, 111 F.3d at 1390. In determining minimum contacts, the Supreme Court has instructed that a court should focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). In *Dakota Industries Inc.*, the Eighth Circuit Court of Appeals summarized these due process requirements:

In a series of cases following *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have "'fair warning'" that they could be "haled into" court in a foreign jurisdiction. This requirement "is satisfied if the defendant had 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities."

The contacts with the forum state must be more than "'random,'" "'fortuitous,'" or "'attenuated.'" The due process clause forecloses personal jurisdiction unless the actions of the "defendant himself . . . create [d] a 'substantial connection' with the forum State." Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether assertion of jurisdiction comports with "'fair play and substantial justice.'"

*Dakota Indus.*, 946 F.2d at 1389 (citations omitted); *see also Stanton*, 340 F.3d at 694; *Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.*, 966 F.2d 1247, 1249-50 (8th Cir.1992) (citing same standards); *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575-76 (8th Cir. 1992) (citing same standards).

In assessing a defendant's "reasonable anticipation" of being haled into court, there must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Bell Paper*, 22 F.3d at 818; *Northrup King Co.*, 51 F.3d at 1386-87; *accord Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

### a.      Specific v. general jurisdiction

There are two broad types of personal jurisdiction:  specific jurisdiction and general

jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Bell Paper*, 22 F.3d at 819. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. *Helicopteros*, 466 U.S. at 414. Specific jurisdiction may not be exercised where none of the actions complained of occurred within or had any connection to the forum state. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993). The non-resident's contacts with the forum may be based on contacts by its representative, in light of the Supreme Court's conclusion that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Burger King Corp.*, 471 U.S. at 480 n.22. In contrast, general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415. For general jurisdiction to exist, the non-resident defendant must be engaged in "continuous and systematic contacts" within the forum. *Helicopteros*, 466 U.S. at 416. "In this situation the forum state has no direct interest in the specific cause of action asserted. Accordingly, contacts of a more extensive quality and nature are required." *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990).

### b. The five factor test

The test for evaluating the propriety of personal jurisdiction under the due process clause requires the court to consider the following five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Stanton*, 340 F.3d at 694; *Epps v. Stewart Information. Servis. Corp.*, 327 F.3d 642, 648 (8th Cir.

2003); *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 613 (8th Cir. 1998); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996); *Northrup King Co.*, 51 F.3d at 1388; *Bell Paper*, 22 F.3d at 818; *Dakota Indus.*, 946 F.2d at 1390; *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338 (8th Cir. 1983). Of these factors, the first three are the most important. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996); *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995); *Northrup King Co.*, 51 F.3d at 1388; *Dakota Indus.*, 946 F.2d at 1390. In particular, the Eighth Circuit Court of Appeals has concluded that a defendant has insufficient contacts with the forum state where the defendant has no office, agent, representative or employees in the forum state, does not do business in the forum state, *Jarvis and Sons v. Freeport Shipbuilding*, 966 F.2d 1247, 1250 (8th Cir. 1992), has no bank accounts or property in the forum, does not advertise or solicit any business in the state, and does not design products for use in the state. *Gould*, 957 F.2d at 576.

### 3. Analysis

Looking at FEMA and TRG's contacts with Iowa, the court notes that both are Maryland corporations with their principal place of business in Washington, D.C. Neither FEMA nor TRG have any office, agent, representative or employee in Iowa, and neither do business in Iowa. Further, neither FEMA nor TRG have any bank accounts or property in Iowa, and neither advertises or solicits any business in Iowa. In establishing personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In this case, there are no such acts by either FEMA or TRG. As significant

minimum contacts are wholly lacking, the court typically would grant defendants' motion to dismiss for lack of personal jurisdiction. Here, however, plaintiff Remmes asserts that FEMA and TRG's participation in the conspiracy alleged in Count III establishes in personam jurisdiction over both FEMA and TRG.

A number of courts have recognized civil conspiracy as a basis to support the exercise of in personam jurisdiction. *See, e.g., Second Amendment Found. v. United States Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1030-31 (D.C. Cir. 1997); *Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992); *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424-25 (D.C. Cir. 1991); *Textor v. Board of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983); *Jung v. Ass'n of American Med. Colls.*, 300 F. Supp.2d 119, 141 (D.D.C. 2004); *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp.2d 690, 697 (N.D. Ill. 2002); *Simon v. Philip Morris*, 86 F. Supp.2d 95, (E.D.N.Y. 2000); *United Phosphorus, Ltd., v. Angus Chem. Co.*, 43 F. Supp.2d 904, 912 (N.D. Ill. 1999); *In re N. Dakota Personal Injury Asbestos Litig. No.1*, 737 F. Supp. 1087, 1097-98 (D.N.D. 1990); *Gemini Enters. Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D. N.C. 1979); *Merkel Associates, Inc. v. Bellofram Corp.*, 437 F. Supp. 612, 617 (W.D.N.Y.1977); *McLaughlin v. Copeland*, 435 F. Supp. 513, 529-533 (D. Md. 1977); *Socialist Workers Party v. Attorney Gen. of the U.S.*, 375 F. Supp. 318, 321 (S.D.N.Y. 1974); *see generally* Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 FORDHAM L. REV. 234 (1983); Stuart M. Riback, Note, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 COLUM. L. REV. 506 (1984). The exercise of long-arm jurisdiction based on the use of conspiracy rests on the concept that the acts of conspirators in furtherance of the conspiracy are attributable to co-conspirators. *Textor*, 711 F.2d at

1392 (citing *Gemini*, 470 F. Supp. at 564). Courts have used this theory to assert jurisdiction "over [those] whom jurisdiction would otherwise be lacking." *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 411 (E.D. Pa. 1981). Although it has been accepted by some courts, others have not recognized it. *See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.*, 307 F. Supp.2d 145, 157-58 (D. Me. 2004); *Steinke v. Safeco Ins. Co.*, 270 F. Supp.2d 1196, 1200 (D. Mont. 2003); *Insolia v. Philip Morris Inc.*, 31 F. Supp.2d 660, 672 (W.D. Wis. 1998); *Gutierrez v. Givens*, 1 F. Supp.2d 1077, 1083 n.1 (S.D. Cal. 1998); *Karsten Mfg. Corp. v. United States Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz.1990); *Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976). Criticism of the theory has centered on whether the due process clause permits a state to assert extra-territorial jurisdiction over a person who did not foresee that the conspiracy which that person joined would commit acts within that state. *See* Althouse, *supra*, at 251-54.

Whether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale is a question of state law. *Davis v. A & J Electronics*, 792 F.2d 74, 76 (7th Cir. 1986); *Textor*, 711 F.2d at 1392-93. The Iowa appellate courts, however, have not yet addressed this issue. Being an issue of first impression, the court would have looked favorably upon a request by the parties to certify this question to the Iowa Supreme Court. *See* Iowa Code § 684A.1; LR 83.1. The parties, however, have not sought to have this issue certified. Therefore, the court will press ahead and seek to discern whether the Iowa Supreme Court would recognize civil conspiracy as a basis to support the exercise of in personam jurisdiction under Iowa's long-arm statute.

As the court noted above, Iowa's long arm statute has been interpreted to give Iowa courts jurisdiction to the fullest constitutional extent. *See Larsen*, 296 N.W.2d at 788; *see also Universal Coop., Inc. v. Tasco, Inc.*, 300 N.W.2d 139, 143 (Iowa 1981); *Aquadrill,*

*Inc.*, 558 N.W.2d at 392; *Bankers Leasing Co. v. Eagle Valley Environmentalists, Inc.*, 387 N.W.2d 380, 382 (Iowa Ct. App. 1986). Because Iowa's long arm statute has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, the question before the court is whether application of the conspiracy theory would violate due process. This issue has been previously addressed by a number of federal courts, the majority of which have concluded that jurisdiction based on the conspiracy theory does not violate due process. *Second Amendment Found.*, 274 F.3d at 524; *Jungquist*, 115 F.3d at 1030-31; *Edmond*, 949 F.2d at 424-25; *Textor*, 711 F.2d at 1387; *McLaughlin*, 435 F. Supp. at 529-533; *Gemini Enters. Inc.*, 470 F. Supp. at 564.

The court further finds it noteworthy that under Iowa's long arm statute, Iowa may exercise personal jurisdiction over those who commit torts, within or without the state, that cause injury to persons or property in Iowa. *See, e.g.*, *Norton v. Local Loan*, 251 N.W.2d 520, 521 (Iowa 1977) (holding that "'A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and the individual's relationship to the state make the exercise of such jurisdiction unreasonable.'") (quoting *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269, 272 (Iowa 1973)). Under Iowa law,

> Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *Basic Chems.*, 251 N.W.2d at 233; *accord Adam v. Mt. Pleasant Bank & Trust Co.*, 387 N.W.2d 771, 773 (Iowa 1986). Thus, conspiracy is merely an avenue for imposing vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert. *See John's Insulation, Inc. v. Siska Constr. Co.*, 774 F. Supp. 156, 162 (S.D.N.Y.1991) ("Allegations of a civil conspiracy, therefore, are proper only for the purpose of

> establishing joint liability by co-participants in tortious conduct."); 2 Dobbs § 340, at 936-37 (characterizing cases applying a civil conspiracy theory as employing a model of vicarious liability).

*Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002).[3] The exercise of personal jurisdiction based on the conspiracy theory meets the standards of due process because it is based on a tortious act being committed in the forum state by a member of the conspiracy. As the Seventh Circuit Court of Appeals cogently noted, it is not clear why personal jurisdiction should be an exception to the general rule of attributing the acts of one conspirator within the scope of the conspiracy to the other conspirators. *Stauffacher*, 969 F.2d at 459. The imposition of such vicarious liability would be defeated, if, even though one member of a conspiracy inflicted an actionable wrong in Iowa, the other members of that conspiracy were permitted to escape being sued in Iowa because they reside in another jurisdiction. Thus, the court concludes that the Iowa Supreme Court would follow the line of authorities that have approved of the exercise of personal jurisdiction based on the conspiracy theory and recognize civil conspiracy as a basis to support the exercise of in personam jurisdiction under Iowa's long-arm statute.

In order to plead successfully facts supporting application of the conspiracy theory of jurisdiction, a plaintiff must allege the following: "(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Jung*, 300 F.

---

[3]The court notes that while it certified the eight questions addressed by the Iowa Supreme Court in *Wright*, 652 N.W.2d at 162, after first deciding these questions in a motion to dismiss, *see Wright v. Brooke Group Ltd.*, 114 F. Supp.2d 797, 838 (N.D. Iowa 2000), the parties are advised that the court will not entertain a motion to certify questions at this late date.

Supp.2d at 141; *see Textor*, 711 F.2d at 1387 ("To plead successfully facts supporting application of the conspiracy theory of jurisdiction a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state."); *see also Second Amendment Found.*, 274 F.3d at 524 (holding that to prevail on conspiracy theory of jurisdiction a party "must make a prima facie showing of civil conspiracy."). Here, viewing the record in the light most favorable to Remmes and resolving all factual conflicts in Remmes's favor, *see Digi-Tel Holdings, Inc.*, 89 F.3d at 522, the court finds that plaintiff Remmes has presented a *prima facie* case showing that FEMA and TRG were involved in a conspiracy with at least defendant Givauden to suppress the health risks of butter flavorings. FEMA members, including defendants IFF, Givauden, FONA, and Sensient, actively sold butter flavors in Iowa. These products were known by Defendants IFF, Givauden, FONA, Sensient, FEMA and TRG to be potentially dangerous to the end users of the butter flavorings. Research concerning the dangers of butter flavorings was concealed from the public, and plaintiff Remmes was injured as a result of his exposure, in Iowa, to butter flavorings. Consequently, the court finds it has personal jurisdiction over defendants FEMA and TRG and denies FEMA and TRG's joint Motion To Dismiss For Lack Of Personal Jurisdiction.

## III.  CONCLUSION

For the aforementioned reasons, the court concludes that plaintiff Remmes has not plead with the particularity required by Rule 9(b). Thus, this portion of defendants IFF, Givauden, FONA, and Sensient's respective motions to dismiss are granted. However, the court grants Remmes's request for leave to replead the claims contained in Counts II and III. Therefore, Remmes must, within thirty (30) days of this order, file an amended complaint adequately pleading fraud in Counts II and III pursuant to Rule 9(b). The court

further concludes that the Iowa Supreme Court would recognize civil conspiracy as a basis to support the exercise of in personam jurisdiction under Iowa's long-arm statute. Moreover, the court concludes that Remmes successfully made out a prima facie case which would support application of the conspiracy theory of jurisdiction. Consequently, the court finds it has personal jurisdiction over defendants FEMA and TRG and denies FEMA and TRG's joint Motion To Dismiss For Lack Of Personal Jurisdiction.

**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2005.

_Mark W. Bennett_
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA