**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

KEVIN REMMES,

        Plaintiff,

vs.

INTERNATIONAL FLAVORS &
FRAGRANCES, INC., GIVAUDAN
FLAVORS CORP., FLAVORS OF
NORTH AMERICA, INC., SENSIENT
FLAVORS, INC., THE FLAVOR &
EXTRACT MANUFACTURERS
ASSOCIATION OF THE UNITED
STATES, and THE ROBERTS GROUP,

        Defendants.

No. C04-4061-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
SENSIENT FLAVORS INC.'S,
INTERNATIONAL FLAVORS &
FRAGRANCES, INC.'S AND
GIVAUDAN FLAVORS
CORPORATION'S MOTIONS TO
DISMISS COUNTS II AND III OF
SECOND AMENDED COMPLAINT**

———————————

**TABLE OF CONTENTS**

*I.* ***INTRODUCTION AND BACKGROUND*** . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.* ***LEGAL ANALYSIS*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *A.  Rule 12(b)(6) Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *B.  Statute Of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    *C.  Pleading Fraud With Specificity* . . . . . . . . . . . . . . . . . . . . . . 20
        *1.  Pleading fraud under Rule 9(b)* . . . . . . . . . . . . . . . . . . . 20
        *2.  Use of discovery in making amendments to fraud claims* . . . . 22

       3.    *Application of the Rule 9(b) pleading standards* . . . . . . . . 24

III. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On June 4, 2004, plaintiff Kevin Remmes filed a petition in Iowa District Court for Woodbury County against defendants International Flavors & Fragrances, Inc. ("IFF"), Givaudan Flavors Corp. ("Givaudan"), Flavors of North America, Inc. ("FONA"), and Sensient Flavors, Inc. ("Sensient"). In his petition, plaintiff Remmes set out claims against the four named defendants, all manufacturers, processors, importers, distributors or sellers of butter flavorings, for strict liability based on design defects and failure to warn, for negligence and for breach of a continuing duty to warn. On July 9, 2004, defendant Sensient removed this case to this court pursuant to 28 U.S.C. § 1441, alleging jurisdiction based on complete diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(a). On October 5, 2004, plaintiff Remmes filed an Amended Complaint against defendants IFF, Givaudan, FONA, Sensient, the Flavor and Extract Manufacturers Association of the United States ("FEMA"), and the Roberts Group, L.L.C. ("TRG") alleging three causes of action. The three causes of action asserted were for negligence, fraudulent concealment and civil conspiracy. The Amended Complaint also alleged that this

court has subject matter jurisdiction by virtue of diversity of citizenship of the parties, 28 U.S.C. § 1332.

This court subsequently dismissed plaintiff Remmes's fraudulent concealment and civil conspiracy claims for failure to state a claim upon which relief may be granted. Specifically, the court found that plaintiff Remmes had failed to meet the specificity pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to Remmes's fraudulent concealment claim. The court, however, also granted plaintiff Remmes's request for leave to replead his fraudulent concealment and civil conspiracy claims. On December 20, 2005, plaintiff Remmes filed a Second Amended Complaint against defendants IFF, Givaudan, FONA, Sensient, FEMA, and TRG alleging the same three causes of action that were advanced in his Amended Complaint, namely negligence, fraudulent concealment and civil conspiracy.

Defendants IFF, Givaudan, and Sensient have each filed motions to dismiss the fraudulent concealment and civil conspiracy claims found in the Second Amended Complaint. Because the grounds raised in each defendant's respective motion to dismiss are identical, the court will generally refer to all three motions to dismiss as defendants' motions. Defendants' motions seek dismissal of Counts II and III on the following grounds: first, that plaintiff Remmes cannot use material obtained through discovery to amend his fraudulent concealment claim; second, that the applicable statute of limitations bars Remmes's claims for fraudulent concealment and civil conspiracy; third, that Remmes has failed to plead his claim of fraudulent concealment with sufficient particularity; and, fourth, that because Remmes's civil conspiracy claim is grounded entirely on the fraudulent concealment claim alleged in Count II it, too, must be dismissed because it is not actionable as an independent tort under Iowa law. Plaintiff Remmes has filed a resistance to defendants' motions.

## B. Factual Background

On a motion to dismiss, the court must assume all facts alleged in plaintiff Remmes's Second Amended Complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Therefore, the following factual background is drawn from plaintiff Remmes's Second Amended Complaint in such a manner.

Plaintiff Remmes resides in Sioux City, Iowa and was employed by the American Popcorn Company in Sioux City, Iowa. Defendant IFF is a New York corporation with its principal place of business in New York, New York. Givaudan is a Delaware corporation with its principal place of business in Cincinnati, Ohio. FONA is an Illinois corporation with its principal place of business in Carol Steam, Illinois. Sensient is a Wisconsin corporation with its principal place of business in Indianapolis, Indiana. Defendants IFF, Givaudan, FONA, and Sensient each design, manufacture, distribute and sell butter flavorings marketed to entities, including the American Popcorn Company.

The butter flavorings sold by defendants IFF, Givaudan, FONA, and Sensient contain diacetyl and/or other volatile organic compounds that can cause human disease and injury. In the course of his employment at the American Popcorn Company, Remmes was exposed to butter flavorings designed, manufactured, distributed and sold by defendants IFF, Givaudan, FONA, and Sensient. Remmes alleges that as a result of this exposure that he has suffered severe and permanent injury to his person including, bronchiolitis obliterans, severe and progressive damage to the respiratory system, and extreme shortness of breath. In addition, because of his exposure, Remmes's life expectancy has been significantly reduced.

In his fraudulent concealment claim, plaintiff Remmes alleges the following with respect to defendant Givaudan:

27.     Defendant Givaudan knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:

      a.     Damage to human mucous membranes, and;
      b.     Respiratory disease.

28.     Defendant Givaudan knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

      a.     By at least 1991, Defendant Givaudan knew that diacetyl was a health hazard when inhaled;

      b.     By at least 1991, Defendant Givaudan knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

      c.     By at least 1991, Defendant Givaudan knew that diacetyl is a hazard to human mucous membranes;

      d.     By at least 1992, Defendant Givaudan knew of at least three occupational exposures where persons working with Defendant Givaudan's butter flavorings were diagnosed with bronchiolitis obliterans and at least one exposure resulted in death;

      e.     By at least 1993, Defendant Givaudan knew that their butter flavoring workers were experiencing "breathing problems";

      f.     By at least 1993, Defendant Givaudan knew that even a short exposure to its butter flavorings could produce severe respiratory effects;

      g.     By at least 1993, Defendant Givaudan knew that persons working around butter flavorings must wear full-face respirators;

h.   By at least 1993, Defendant Givaudan knew that diacetyl is a severe respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

I.   By at least 1993, Defendant Givaudan knew that diacetyl causes severe lung disease, including emphysema and death;

j.   By at least 1993, Defendant Givaudan knew the $LC_{50}$ for diacetyl;

k.   By at least 1994, Defendant Givaudan knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

l.   By at least 1994, Defendant Givaudan knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

m.   By at least 1994, Defendant Givaudan recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

n.   By at least 1995, Defendant Givaudan knew that their customers were experiencing severe health problems associated with their butter flavorings;

o.   By at least 1995, Defendant Givaudan were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

p.   By at least 1995, Defendant Givaudan knew that diacetyl is a "harmful organic vapor";

q.   By at least 1995, Defendant Givaudan required its own researchers to sign confidentiality agreements in an effort to conceal known hazards of its butter flavorings from the public;

> r.   By at least 1996, Defendant Givaudan was aware of all available research regarding diacetyl's effects on the mucous membranes;
>
> s.   By at least 1996, Defendant Givaudan knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;
>
> t.   By at least 2002, Defendant Givaudan agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe, and;
>
> u.   By as late as 2003, Defendant Givaudan's material safety data sheets indicated that their butter flavoring had no health hazard, despite specific knowledge of its severe respiratory health hazards.

Second Am. Compl. at ¶¶ 27-28.

Again with respect to his fraudulent concealment claim, plaintiff Remmes alleges the following concerning defendant Sensient:

> 29.   Defendant Sensient knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:
>
> a.   Damage to human mucous membranes, and;
>
> b.   Respiratory disease.
>
> 30.   Defendant Sensient knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:
>
> a.   By at least 1991, Defendant Sensient knew that

diacetyl was a health hazard when inhaled;

b.    By at least 1991, Defendant Sensient knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

c.    By at least 1991, Defendant Sensient knew that diacetyl is a hazard to human mucous membranes;

d.    By at least 1991, Defendant Sensient had knowledge that employees exposed to their butter flavoring were experiencing eye irritations:

e.    By at least 1993, Defendant Sensient knew that their butter flavoring workers were experiencing "breathing problems";

f.    By at least 1993, Defendant Sensient knew that persons working around butter flavorings must wear full-face respirators;

g.    By at least 1993, Defendant Sensient knew that diacetyl is a serve respiratory hazard, causing, *inter alia*:    respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

h.    By at least 1993, Defendant Sensient knew that diacetyl causes severe lung disease, including emphysema and death;

i.    By at least 1993, Defendant Sensient knew the $LC_{50}$ for diacetyl;

j.    By at least 1994, Defendant Sensient knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

k.    By at least 1994, Defendant Sensient knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

l.    By at least 1994, Defendant Sensient recognized

that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

m. By at least 1995, Defendant Sensient knew that their customers were experiencing severe health problems associated with their butter flavorings;

n. By at least 1995, Defendant Sensient were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

o. By at least 1995, Defendant Sensient knew that diacetyl is a "harmful organic vapor";

p. By at least 1996, Defendant Sensient was aware of all available research regarding diacetyl's effects on the mucous membranes;

q. By at least 1996, Defendant Sensient knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

r. By at least 2002, Defendant Sensient agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe, and;

s. By as late as 2004, Defendant Sensient's material safety data sheets indicated that their butter flavoring had no health hazard, despite specific knowledge of its severe respiratory health hazards.

Second Am. Compl. at ¶¶ 29-30.

Also with respect to his fraudulent concealment claim, plaintiff Remmes alleges the following concerning defendant IFF:

33.     Defendant IFF knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:

   a.     Damage to human mucous membranes, and;
   b.     Respiratory disease.

34.     Defendant IFF knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

   a.     By at least 1991, Defendant IFF knew that diacetyl was a health hazard when inhaled;

   b.     By at least 1991, Defendant IFF knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

   c.     By at least 1991, Defendant IFF knew that diacetyl is a hazard to human mucous membranes;

   d.     By at least 1993, Defendant IFF knew that their butter flavoring workers were experiencing breathing problems;

   e.     By at least 1993, Defendant IFF knew that persons working around butter flavorings must wear full-face respirators;

   f.     By at least 1993, Defendant IFF knew that diacetyl is a severe respiratory hazard, causing, *inter alia*:     respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

   g.     By at least 1993, Defendant IFF knew that diacetyl causes severe lung disease, including emphysema and death;

   h.     By at least 1993, Defendant IFF knew the $LC_{50}$ for diacetyl;

i.      By at least 1994, Defendant IFF knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

j.      By at least 1994, Defendant IFF knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

k.      By at least 1994, Defendant IFF recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

l.      By at least 1995, Defendant IFF knew that their customers were experiencing severe health problems associated with their butter flavorings;

m.      By at least 1995, Defendant IFF were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

n.      By at least 1995, Defendant IFF knew that diacetyl is a "harmful organic vapor";

o.      By at least 1996, Defendant IFF was aware of all available research regarding diacetyl's effects on the mucous membranes;

p.      By at least 1996, Defendant IFF knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

q.      By as late as 2000, Defendant IFF's material safety data sheets indicated that their butter flavoring was only a slight health hazard, despite specific knowledge of its severe respiratory health hazards, and

r.      By at least 2002, Defendant IFF agreed with FEMA to affirmatively conceal known hazards of their butter flavorings by providing anti-warnings stating that their butter flavorings were safe.

Second Am. Compl. at ¶¶ 33-34.

Finally, in his fraudulent concealment claim, plaintiff Remmes alleges the following with respect to all three defendants:

> 35. Despite the fact that Defendants knew that the butter flavorings and/or their constituents cause adverse health effects, including severe respiratory disease, they intentionally and maliciously chose to conceal these facts from the scientific and medical communities, the government and the public, including Plaintiff, Kevin Remmes.
> 36. The information concealed by the Defendants regarding the serious health risks of using their butter flavorings was material.
> 37. Defendants had a duty to disclose such information to the Plaintiff because, *inter alia*,
>   a. Defendants possessed knowledge regarding the health effects of butter flavorings and/or their constituents that was superior to Plaintiff's knowledge;
>   b. Defendants had a relationship of trust and/or confidence with Plaintiff, and;
>   c. other attendant circumstances.
> 38. Defendants profited from their fraud by continuing and increasing the sale of butter flavoring products which they knew were hazardous to persons deliberately kept ignorant of material facts concerning the true hazards of diacetyl and/or butter flavorings.

Second Am. Compl. at ¶ 35-38.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(6) Standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether

the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir. 1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir. 1996) (same).

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 C. Wright & A.

Miller, FEDERAL PRACTICE AND PROCEDURE § 1357, at 595-97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); *accord Conley,* 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same);

*WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). With these standards in mind, the court turns to consideration of defendants' respective motions to dismiss counts II and III.

## B. *Statute Of Limitations*

Defendants initially assert that the statute of limitations bars plaintiff Remmes's claims for fraudulent concealment and civil conspiracy because Remmes did not bring his fraudulent concealment and civil conspiracy claim within the period permitted by Iowa Code § 614.1(2). Defendants further contend that plaintiff Remmes's fraudulent concealment and civil conspiracy claims do not relate back to the date of his original petition in this matter. Plaintiff Remmes contests defendants' contentions, arguing that his claims for fraudulent concealment and civil conspiracy relate back to the time of his filing the original petition and, as a result, are not time barred.

In his original petition filed in Iowa District Court, plaintiff Remmes alleged that "[u]ntil June 6, 2002, Plaintiff Kevin Remmes was unaware of the dangerous propensities of butter flavoring and unaware of his medical condition and its cause." Petition at ¶ 7. Iowa Code § 614.1(2) provides that:

> Actions may be brought within the times herein limited,
> respectively, after their causes accrue, and not afterwards,

except when otherwise specially declared:

   . . .

2. Injuries to person or reputation--relative rights--statute penalty. Those founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years.

IOWA CODE § 614.1(2).

Under Iowa law, "[t]he general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit." *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 462 (Iowa 1984). The common law discovery rule is applicable in this case. *See Borchard v. Anderson*, 542 N.W.2d 247, 250 (Iowa 1996); *LeBeau v. Dimig*, 446 N.W.2d 800, 802 (Iowa 1989). Under the common law discovery rule, an action does not accrue until the plaintiff knows or in the exercise of reasonable care should have known both the fact of the injury and its cause. *Frideres v. Schiltz*, 540 N.W.2d 261, 268 (Iowa 1995). Thus, under the two-year statute of limitation found in § 614.1(2), plaintiff Remmes's claim for negligence found in the original petition was timely filed since he filed his action on June 4, 2004, less than two years after he discovered both the dangers of butter flavorings and the nexus between those dangers and his own medical condition.

Plaintiff Remmes, however, did not include claims for fraudulent concealment or civil conspiracy in his original petition. Plaintiff Remmes did not add these claims until he filed his First Amended Petition on October 5, 2004. Since plaintiff Remmes alleges that he knew of the dangers of butter flavorings and the nexus between those dangers and his own medical condition by June 6, 2002, his claims for fraudulent concealment and civil conspiracy must be deemed to be untimely filed unless they relate back to the date that the original petition was filed in Iowa District Court.

The issue of relation back of an amendment is one of procedure and is governed by Rule 15(c) of the Federal Rules of Civil Procedure. *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 416 (8th Cir. 1967), *rev'd on other grounds*, 419 F.2d 480 (8th Cir. 1969); *see also Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962 (11th Cir. 2001) (noting that "Federal Rule of Civil Procedure 15(c) governs relation back of amendments to pleadings in federal court, and provides several ways in which an amended pleading can relate back to an original pleading."). Under Rule 15(c), an amendment of a pleading relates back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

FED. R. CIV. P. 15(c).[1] "'The rationale of Rule 15(c) is that a party who has been notified

---

[1] The court notes that Rule 15(c)(1) was added during the 1991 amendments to Rule 15. The Advisory Committee Notes accompanying this subsection state that the provision "is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." FED. R. CIV. P. 15(c)(1) advisory committee's note. The advisory notes further state: "Whatever may be the controlling

(continued...)

of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Popp Telecom, Inc. v. American Sharecom, Inc.*, 361 F.3d 482, 490 n.8 (8th 2004) (quoting *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003)). The Eighth Circuit Court of Appeals has further noted that:

> "[R]elation back has been permitted of amendments that change the legal theory of the action." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996)). "It is the facts well pleaded, not the theory of recovery or legal conclusions, that state a cause of action and put a party on notice." *Hopkins [v. Saunders]*, 199 F.3d [968] at 973 [8th Cir. 1999)] (quoted cases and internal quotations omitted).

*Maegdlin v. International Ass'n of Machinists & Aerospace Workers*, 309 F.3d 1051, 1053 (8th Cir. 2002); *see also Travelers Insurance Co. v. 633 Third Assocs.*, 14 F.3d 114, 126 (2d Cir. 1994) (a claim on a different legal theory would relate back to the original complaint).

In the present case, the court concludes that plaintiff Remmes's fraudulent concealment and civil conspiracy claims should relate back to the date of the filing of his original petition. Both of these claims asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. CIV. P. 15(c)((2). A simple comparison of the original petition with

---

[1](...continued)

body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *Id.* Rule 15(c)(1). Thus, the advisory notes clarify that state law should be applied if it provides a more expansive view of the principle of relation back than that found in Rule 15. Here, the parties do not assert, nor can the court conclude, that Iowa's law governing relation back of amendments, found in Iowa Rule of Civil Procedure 1.402(5), is any more expansive than that found in Rule 15(c).

the First Amended Petition filed on October 5, 2004, demonstrates that the factual allegations upon which both complaints are based are nearly identical. Specifically, the court notes that the original petition included the following allegation of facts:

> 8. The Defendants, acting through their agents, servants, and/or employees, caused certain butter flavoring products to be placed in the stream of interstate commerce with the result that Plaintiff Kevin Remmes was exposed to said butter flavoring in the microwave production area, which encompasses a mixing room and packaging lines. Butter flavoring contains diacetyl and other volatile compounds that cause damage to the epithelial lining of the respiratory system, bronchiolitis obliterans, chronic obstructive pulmonary disease, severe lung impairment, chronic cough, shortness of breath, fatigue, obstructive spirometry abnormalities, and other respiratory diseases.
>
> 9. Defendants knew or should have known of the hazardous nature of butter flavoring at the time Plaintiff worked at American Popcorn Company and its Jolly Time microwave packaging facility. Plaintiff was exposed to Defendants' products, and was injured. Notwithstanding, Defendants' [sic] failed to warn of the defective nature of their products and failed to give instructions on safe use of their products.

Petition at ¶¶ 8-9.

Plaintiff Remmes's new claims for fraudulent concealment and civil conspiracy merely build on these allegations, adding the contention that defendants not only failed to inform him of the known dangers of their butter flavorings product but took the affirmative actions of intentionally concealing those dangers and conspiring with others to do so. Thus, the court concludes that plaintiff Remmes's new claims arise out of the same nucleus of operative facts as was pleaded in the original petition and, as a result, relate back to the filing of his original petition. Consequently, the two year statute of limitations found in

Iowa Code Iowa Code § 614.1(2) presents no bar to plaintiff Remmes's assertion of his fraudulent concealment and civil conspiracy claims in this lawsuit. Therefore, this portion of defendants' motions to dismiss are denied.

### C. Pleading Fraud With Specificity

Defendants assert that plaintiff Remmes has again failed to plead his fraudulent concealment and civil conspiracy claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b),[2] and, therefore, has failed to state a claim upon which relief can be granted. Plaintiff Remmes counters that his fraudulent concealment and civil conspiracy claims as amended are sufficient under the standards of Rule 9(b). The court, therefore, must determine whether plaintiff Remmes has pleaded his fraud based claims with sufficient particularity in his Second Amended Complaint.

#### 1. Pleading fraud under Rule 9(b)

This court has articulated the standards for pleading fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure in a number of prior decisions. *See Schuster v. Anderson*, 378 F. Supp. 2d 1070, 1086 (N.D. Iowa 2005); *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 914 (N.D. Iowa 2001); *Wright v. Brooke Group, Ltd.*, 114 F. Supp. 2d 797, 832-33 (N.D. Iowa 2000); *Doe v.*

---

[2]Federal Rule of Civil Procedure Rule 9(b) provides as follows:

> (b) **Fraud, Mistake, Condition of the Mind**. In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

FED. R. CIV. P. 9(b).

*Hartz*, 52 F. Supp.2d 1027, 1055 (N.D. Iowa 1999); *Brown v. North Cent. F.S., Inc.*, 987 F. Supp. 1150, 1155-57 (N.D. Iowa 1997); *Brown v. North Cent. F.S., Inc.*, 173 F.R.D. 658, 664-65 (N.D. Iowa 1997); *North Cent. F.S., Inc. v. Brown*, 951 F. Supp. 1383, 1407-08 (N.D. Iowa 1996); *DeWit v. Firstar Corp.*, 879 F. Supp. 947, 970 (N.D. Iowa 1995). Thus, only a brief discussion of these matters is required here.

Rule 9(b) of the Federal Rules of Civil Procedure "'requires a plaintiff to allege with particularity the facts constituting the fraud.'" *Brown*, 987 F.Supp. at 1155 (quoting *Independent Business Forms v. A-M Graphics*, 127 F.3d 698, 703 n.2 (8th Cir. 1997)). "'When pleading fraud, a plaintiff cannot simply make conclusory allegations.'" *Id.* (quoting *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir.1997)). In *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir. 1995), the Eighth Circuit Court of Appeals explained:

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "'Circumstances' include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982), *adhered to on reh'g*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985), conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *In re Flight Transp. Corp. Sec. Litig.*, 593 F. Supp. 612, 620 (D. Minn. 1984).

*Commercial Property*, 61 F.3d at 644; *see United States ex rel. Joshi v. St. Luke's Hosp.*,

*Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) ("To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."); *Roberts*, 128 F.3d at 651 (noting that factors a court should examine in determining whether the "circumstances" constituting fraud are stated with particularity under Rule 9(b) "include the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud."). However, the Eighth Circuit Court of Appeals has also noted that this rule of pleading is to be interpreted "'in harmony with the principles of notice pleading.'" *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). That is, "[a]lthough a pleading alleging fraud need not provide anything more than notice of the claim, it must contain 'a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.'" *Id.* (quoting *Abels*, 259 F.3d at 920).

### 2. *Use of discovery in making amendments to fraud claims*

Before the court can apply the Rule 9(b) pleading standards to the Second Amended Complaint in this case, the court must first take up defendants' assertion that discovery cannot be used by plaintiff Remmes to amend his fraudulent concealment claim. Defendants request that the court strike a number of paragraphs of the Second Amended Complaint and analyze the legal sufficiency of plaintiff Remmes's fraudulent concealment claim based on his pre-discovery knowledge and allegations. Plaintiff Remmes responds that he is permitted to amend his complaint with any materials learned through discovery and that defendants contention to the contrary is unfounded.

In general, the scope of discovery under the Federal Rules of Civil Procedure is broad, constrained, for the most part, only by privilege and relevancy, to wit:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

FED. R. CIV. P. 26(b)(1). The rule contains no prohibition on the use of the materials unearthed during discovery. Similarly, the federal rule governing the amendment of pleadings, Federal Rule of Civil Procedure 15, contains no restriction on the use of information garnered through discovery in framing an amendment.[3] Moreover, defendants

---

[3]Federal Rule of Civil Procedure 15(a) provides as follows:

> **(a) Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the

(continued...)

have not directed the court to any legal authorities which would support such a limitation, nor has the court's own research disclosed any such authority. Instead, the case authorities cited by defendants stand for the proposition that allegations of fraud do not constitute a license for the party making them to undertake discovery in order to unearth unknown wrongs. *See Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972) (noting that one of the purposes for Rule 9(b)'s specificity requirement is to inhibit the filing of a complaint as a pretext for discovery of unknown wrongs); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639-40 (N.D. Cal. 1980) ("A complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one."). Therefore, in the absence of any legal authority which would permit the court to selectively exclude those portions of the Second Amended Complaint which were added following discovery and then proceed to analyze the legal sufficiency of plaintiff Remmes's fraudulent concealment claim based on his pre-discovery knowledge and allegations, the court will proceed to conduct its analysis of the Second Amended Complaint without redaction.

### 3. *Application of the Rule 9(b) pleading standards*

Defendants assert that plaintiff Remmes has failed to satisfy Rule 9(b)'s particularity requirements because Remmes continues to refer to fraud by a collective group of defendants instead of alleging individual acts by a particular defendant, and, even when a specific defendant is identified, Remmes fails to plead the who, what, where, and how

---

[3](...continued)
        amended pleading, whichever period may be the longer, unless
        the court otherwise orders.

FED. R. CIV. P. 15(a).

of the alleged fraudulent concealment.  Plaintiff Remmes counters that he has, through his amendment, satisfied Rule 9(b)'s particularity requirement.

The court concludes that plaintiff Remmes has failed to give defendants sufficient notice of his fraudulent concealment claim to allow them to respond in an informed manner.  The court notes that while defendants have identified a number of questions left unanswered by Remmes's Second Amended Complaint, Rule 9(b) does not require absolute particularity.  *See* 5A CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1298 (2004) ("the rule regarding the pleading of fraud does not require absolute particularity or a recital of the evidence, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery").  Moreover,  the court notes that the specificity requirement extends only to the particular circumstances constituting fraud.  *See Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004).  The other elements of fraud, such as intent and knowledge, may be averred in general terms.  *See* FED. R. CIV. P. 9(b).  Further complicating matters here is the fact that the fraud allegation is not one for an affirmative misrepresentation but fraudulent concealment which consists of non-action and is by its nature vary difficult to plead with particularity.  *Bear Hollow, L.L.C. v. Moberk, L.L.C.*, ---F. Supp.2d---, 2006 WL 1642126, at *4 (W.D.N.C. 2006); *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 202 (M.D.N.C. 1997).  The court in *Breeden*  directed that a plaintiff making a fraudulent concealment claim usually will be required to allege with particularity the following:

> (1) the relationship or situation giving rise to the duty to speak,
> (2) the event or events triggering the duty to speak, and/or the
> general time period over which the relationship arose and the
> fraudulent conduct occurred, (3) the general content of the
> information that was withheld and the reason for its

materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Breeden*, 171 F.R.D. at 202; *see Bear Hollow, L.L.C.*, ---F. Supp.2d---, 2006 WL 1642126, at \*4; *Hill v. Brush*, 383 F. Supp. 814, 823 n.11 (D. Md. 2005). The court will analyze the sufficiency of the pleadings of fraud in the Second Amended Complaint using this approach, considering each of the requirements in turn.

In determining whether a manufacturer owes a duty to warn, Iowa courts apply the principles of the Restatement (Second) of Torts § 388. *See West v. Broderick & Bascom Rope Co.*, 197 N.W.2d 202, 209 (Iowa 1972). Section 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

RESTATEMENT (SECOND) OF TORTS § 388 (1999) (Section 388 is made applicable to manufacturers by § 394). Here, plaintiff Remmes specifically alleges that defendants had a duty to warn all foreseeable users of the known dangers of their butter flavorings

26

products and/or their constituents.  Second Am. Comp. at ¶ 23 (f).  In addition, Remmes alleges that he was exposed, through his work at American Popcorn Company, to butter flavorings products manufactured, marketed, distributed and sold by defendants, and, as a result, he has suffered severe and permanent injury to his person.  Second Am. Comp. at ¶ 13).  Because this matter is before the court on motions to dismiss, and taking the facts in the light most favorable to plaintiff Remmes, the court finds that Remmes has sufficiently alleged a legal basis upon which defendants had a duty to disclose the known dangers of their butter flavorings to him and the harm that occurred to him as a result of his exposure.

The court further finds that plaintiff Remmes has identified with particularity those events which triggered defendants' duty to speak, the general time period over which the fraudulent conduct occurred, the general content of the information that was withheld and the identity of those under a duty who failed to make such disclosures.  Specifically, with respect to Givaudan, plaintiff Remmes alleges the following:

> 27.    Defendant Givaudan knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:
>
>> a.    Damage to human mucous membranes, and;
>> b.    Respiratory disease.
>
> 28.    Defendant Givaudan knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:
>
>> a.    By at least 1991, Defendant Givaudan knew that diacetyl was a health hazard when inhaled;
>> b.    By at least 1991, Defendant Givaudan knew that

the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

c.    By at least 1991, Defendant Givaudan knew that diacetyl is a hazard to human mucous membranes;

d.    By at least 1992, Defendant Givaudan knew of at least three occupational exposures where persons working with Defendant Givaudan's butter flavorings were diagnosed with bronchiolitis obliterans and at least one exposure resulted in death;

e.    By at least 1993, Defendant Givaudan knew that their butter flavoring workers were experiencing "breathing problems";

f.    By at least 1993, Defendant Givaudan knew that even a short exposure to its butter flavorings could produce severe respiratory effects;

g.    By at least 1993, Defendant Givaudan knew that persons working around butter flavorings must wear full-face respirators;

h.    By at least 1993, Defendant Givaudan knew that diacetyl is a severe respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

i.    By at least 1993, Defendant Givaudan knew that diacetyl causes severe lung disease, including emphysema and death;

j.    By at least 1993, Defendant Givaudan knew the $LC_{50}$ for diacetyl;

k.    By at least 1994, Defendant Givaudan knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

l.    By at least 1994, Defendant Givaudan knew that diacetyl volatilizes above 83F and that potential

diacetyl volatilization must be minimized for worker safety;

m.    By at least 1994, Defendant Givaudan recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

n.    By at least 1995, Defendant Givaudan knew that their customers were experiencing severe health problems associated with their butter flavorings;

o.    By at least 1995, Defendant Givaudan were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

p.    By at least 1995, Defendant Givaudan knew that diacetyl is a "harmful organic vapor";

q.    By at least 1995, Defendant Givaudan required its own researchers to sign confidentiality agreements in an effort to conceal known hazards of its butter flavorings from the public;

r.    By at least 1996, Defendant Givaudan was aware of all available research regarding diacetyl's effects on the mucous membranes;

s.    By at least 1996, Defendant Givaudan knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

t.    By at least 2002, Defendant Givaudan agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe, and;

u.    By as late as 2003, Defendant Givaudan's material safety data sheets indicated that their butter flavoring had no health hazard, despite specific knowledge of its severe respiratory

health hazards.

Second Am. Compl. at ¶¶ 27-28. With respect to defendant Sensient, plaintiff Remmes alleges:

> 29. Defendant Sensient knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:
>
> > a. Damage to human mucous membranes, and;
> > b. Respiratory disease.
>
> 30. Defendant Sensient knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:
>
> > a. By at least 1991, Defendant Sensient knew that diacetyl was a health hazard when inhaled;
> > b. By at least 1991, Defendant Sensient knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;
> > c. By at least 1991, Defendant Sensient knew that diacetyl is a hazard to human mucous membranes;
> > d. By at least 1991, Defendant Sensient had knowledge that employees exposed to their butter flavoring were experiencing eye irritations:
> > e. By at least 1993, Defendant Sensient knew that their butter flavoring workers were experiencing "breathing problems";
> > f. By at least 1993, Defendant Sensient knew that persons working around butter flavorings must wear full-face respirators;

g.    By at least 1993, Defendant Sensient knew that diacetyl is a serve respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

h.    By at least 1993, Defendant Sensient knew that diacetyl causes severe lung disease, including emphysema and death;

i.    By at least 1993, Defendant Sensient knew the $LC_{50}$ for diacetyl;

j.    By at least 1994, Defendant Sensient knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

k.    By at least 1994, Defendant Sensient knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

l.    By at least 1994, Defendant Sensient recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

m.    By at least 1995, Defendant Sensient knew that their customers were experiencing severe health problems associated with their butter flavorings;

n.    By at least 1995, Defendant Sensient were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

o.    By at least 1995, Defendant Sensient knew that diacetyl is a "harmful organic vapor";

p.    By at least 1996, Defendant Sensient was aware of all available research regarding diacetyl's effects on the mucous membranes;

q.    By at least 1996, Defendant Sensient knew or

should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

r.   By at least 2002, Defendant Sensient agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe, and;

s.   By as late as 2004, Defendant Sensient's material safety data sheets indicated that their butter flavoring had no health hazard, despite specific knowledge of its severe respiratory health hazards.

Second Am. Compl. at ¶¶ 29-30. Finally, with respect to defendant IFF, plaintiff Remmes alleges:

33.   Defendant IFF knew, or should have known, that butter flavorings and/or their constituents cause adverse health effects by at least 1991, including, but not limited to, the following:

a.   Damage to human mucous membranes, and;
b,   Respiratory disease.

34.   Defendant IFF knew or should have known certain information regarding the health hazards of butter flavorings and/or their constituents including, but not limited to, the following:

a.   By at least 1991, Defendant IFF knew that diacetyl was a health hazard when inhaled;

b.   By at least 1991, Defendant IFF knew that the level of diacetyl in areas where butter flavorings are used could and should be monitored through air sampling;

c.   By at least 1991, Defendant IFF knew that diacetyl is a hazard to human mucous

membranes;

d.    By at least 1993, Defendant IFF knew that their butter flavoring workers were experiencing breathing problems;

e.    By at least 1993, Defendant IFF knew that persons working around butter flavorings must wear full-face respirators;

f.    By at least 1993, Defendant IFF knew that diacetyl is a serve respiratory hazard, causing, *inter alia*: respiratory tract injury; focal hyperemia of the lungs; atelectasis; bloody edema of the lungs; bronchial edema, and, emphysema;

g.    By at least 1993, Defendant IFF knew that diacetyl causes severe lung disease, including emphysema and death;

h.    By at least 1993, Defendant IFF knew the $LC_{50}$ for diacetyl;

i.    By at least 1994, Defendant IFF knew that diacetyl is a "potential respiratory exposure" for persons working around butter flavorings;

j.    By at least 1994, Defendant IFF knew that diacetyl volatilizes above 83F and that potential diacetyl volatilization must be minimized for worker safety;

k.    By at least 1994, Defendant IFF recognized that butter flavorings should be mixed in a "closed system" to prevent volatilization of diacetyl or other butter flavoring constituents into the air;

l.    By at least 1995, Defendant IFF knew that their customers were experiencing severe health problems associated with their butter flavorings;

m.    By at least 1995, Defendant IFF were specifically requested by their customers to "advise all butter users of the danger of butters" and specifically recommend what type of Personal Protective Equipment should be worn;

n.   By at least 1995, Defendant IFF knew that diacetyl is a "harmful organic vapor";

o.   By at least 1996, Defendant IFF was aware of all available research regarding diacetyl's effects on the mucous membranes;

p.   By at least 1996, Defendant IFF knew or should have known that the butter flavorings and/or their constituents cause bronchiolitis obliterans;

q.   By as late as 2000, Defendant IFF's material safety data sheets indicated that their butter flavoring was only a slight health hazard, despite specific knowledge of its severe respiratory health hazards, and

r.   By at least 2002, Defendant IFF agreed with FEMA to affirmatively conceal known hazards of its butter flavorings by providing anti-warnings stating that their butter flavorings were safe.

Second Am. Compl. at ¶¶ 33-34.

The court further concludes plaintiff Remmes has also identified what defendants gained by withholding information, alleging: "Defendants profited from their fraud by continuing and increasing the sale of butter flavoring products which they knew were hazardous to persons deliberately kept ignorant of material facts concerning the true hazards of diacetyl and/or butter flavorings." Second Am. Compl. at ¶¶ 38.

The final factor which the court must consider is whether plaintiff Remmes has identified why his reliance on defendants' omissions was both reasonable and detrimental. "Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud . . .and such reliance must be pleaded with particularity." *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) (citing *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 629 (4th Cir.), *cert. denied*, 434

U.S. 923 (1977)); *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006) ("Conclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud . . "); *Tri-Med Finance Co. v. National Century Fin. Enter., Inc.*, 208 F.3d 215, 2000 WL 282445, at *7 (6th Cir. Mar. 6, 2000) (unpublished table decision affirming dismissal of fraud claims where plaintiff failed to plead justifiable reliance with particularity); *Food Lion, L.L.C. v. Schuster Mktg. Corp.*, 382 F. Supp.2d 793, 798 (E.D.N.C. 2005); *Smith v. Mitlof*, 198 F. Supp.2d 492, 504-05 (S.D.N.Y. 2002) (holding that the complaint's allegation that the plaintiffs reasonably relied on the fraudulent representations was insufficient to meet the heightened pleading requirements of Rule 9(b)); *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1479 (D. Colo. 1991) (noting that detrimental reliance "must be pled with particularity."). Justifiable reliance is an essential element for fraud claims under Iowa law. See *In re Marriage of Cutler*, 588 N.W.2d 425, 430 (Iowa 1999) (noting that justifiable reliance is a required element of fraud claims under Iowa law); *Lee County Mental Health Center, Inc. v. Lee County Bd. of Supervisors*, 2000 WL 128873, at *5 (Iowa Ct. App. Sept, 13, 2000) (holding that a plaintiff must prove justifiable reliance as element of fraudulent nondisclosure); *see also Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001) (holding that a plaintiff must prove justifiable reliance in order to establish a claim of fraudulent misrepresentation under Iowa law); IOWA CIVIL JURY INSTRUCTIONS , 810.2 (identifying justifiable reliance as one of the elements of fraudulent nondisclosure). Here, plaintiff Remmes has not pleaded justifiable reliance with particularity. Indeed, plaintiff Remmes does not touch on the topic of his reliance whatsoever in his Second Amended Complaint. Thus, the court concludes that plaintiff Remmes has not met the specificity requirements of Rule 9(b) as to his claim of fraudulent concealment found in Count II. Thus, Count II must be dismissed for failure to plead fraud with specificity. Moreover,

the court concludes that the civil conspiracy claim found in Count III must also be dismissed because that claim is based entirely on the fraudulent concealment claim alleged in Count II. Therefore, the court grants all three defendants' respective motions to dismiss counts II and III of plaintiff's Second Amended Complaint.

### III. CONCLUSION

For the reasons addressed above, the court concludes that plaintiff Remmes has not plead with the particularity required by Rule 9(b). Thus, this portion of defendants IFF, Givauden, and Sensient's respective motions to dismiss Counts II and III of the Second Amended Complaint are granted and those counts are dismissed in their entirety.

**IT IS SO ORDERED.**

**DATED** this 26th day of September, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA